IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Asahi Glass Co., Ltd.,   Case No. 3:03CV7120

    Plaintiff

v.   ORDER

Toledo Engineering Co., Inc.,

    Defendant

This is a suit by Asahi Glass Co., Ltd., a Japanese manufacturer of ultra-thin glass used in televisions, computers, and other applications requiring high optical quality and very thin glass. The defendant, Toledo Engineering Company (TECO) designs and participates in the construction of furnaces for glass manufacture.

Among TECO's customers is Schott Glas, a German glass manufacturer. In 1992, pursuant to a limited license, Asahi provided Schott with know-how for use in constructing a plant to manufacture ultra-thin glass in Germany.

Thereafter, Schott undertook plans to erect a second plant (the NOWA plant) to manufacture thin float transistor (TFT) glass. Schott employed TECO to work on the design and construction of this facility.

Asahi, concerned that Schott was using its proprietary information to construct the NOWA line, invoked a provision of its license agreement with Schott and began arbitration proceedings in Switzerland. Though begun more than two years ago, those proceedings have yet to be completed.

Concerned as well that Schott had disclosed its proprietary information to TECO, Asahi brought this suit to determine whether Schott had obtained such information, and, if so, to restrain Schott's use of that information.

Asahi's demand for injunctive relief was resolved when the parties agreed to injunctive language drafted by TECO's attorneys. Pursuant to that language, TECO agreed to refrain from future use of any information (not just Asahi-derived information) obtained from Schott during its work on the NOWA project.

On learning in July, 2004, from reports in the Korean press that Schott was planning to construct a glass factory in Korea, Asahi asked TECO to confirm its compliance with the injunction. In response, TECO informed Asahi that Schott had asked it to work on the project, as well as another project in Germany (known as the ALPHA project).

After Asahi was granted leave to take discovery to determine whether TECO had violated the injunction, TECO sought this court's approval to participate in the ALPHA project. Before doing so, TECO had, without the prior knowledge of Asahi or approval of this court, participated in a three-day meeting in June, 2004, with Schott in Germany. Among the subjects discussed, in addition to some problems on the NOWA project, was possible future work by TECO on the ALPHA project. This led to a filing by Asahi of a show cause motion.

Following initial proceedings and a hearing on that motion, I concluded that TECO had contravened the restrictions in the injunction when, *inter alia*, its representatives attended the June, 2004, meeting and discussions in Germany with Schott employees and officials. (Doc. 112).

Pending is Asahi's motion for an award of the attorneys' fees and costs paid to its lawyers and expended by it during the proceedings leading to my finding that TECO had failed to comply with the injunction against any use of information obtained from Schott during the NOWA project.

TECO opposes the motion on several grounds.

For the following reasons, I find that Asahi is entitled to an award of the monies spent to enforce the injunction, and that the amount sought is reasonable and should be reimbursed to it by TECO.

## Discussion

In opposing Asahi's fee motion, TECO contends: 1) the finding that it was in contravention of the injunction does not merit an award of fees and costs against it; 2) even if sanctions might be awarded against it for misconduct, it is not appropriate to make such award under the circumstances of this case, particularly as TECO is and has been in complete compliance with the injunction since June, 2004; 3) the fees sought – more than $550 thousand – are disproportionate to any injury incurred by Asahi; 4) a fee award is not appropriate because Asahi's motives in pursuing the show cause proceedings were inappropriate; and 5) the award being sought is excessive.

I disagree with each of these contentions.

### 1. An Award of Fees is Merited

TECO argues that its attendance at the June, 2004, meeting and related discussions with Schott about working with Schott on additional ultra-thin glass projects caused no harm to Asahi, as those discussions have, for various reasons, gone nowhere.[1]

---

[1] Among the reasons those discussions have not led to further action, at least on TECO'S part, was Asahi's discovery of the Korean press reports about Schott's plans to put a plant in that country. That information

But that does not mean that Asahi was not harmed: it had to spend more than a half-million dollars enforcing a straightforward, unambiguous injunction, the terms of which TECO itself had proposed. Unless reimbursed, those monies are lost to Asahi, and constitute damage done to it as a result of TECO's noncompliance with the order.

To be sure, Asahi would have been more directly and more extensively harmed had the Korean and ALPHA projects gone forward to completion, and started producing glass. But the fact that the plans were cut short as the seed was being planted, rather than after it had sprouted or reached full flower, does not mean that Asahi suffered neither harm nor damage.

I do not find that TECO's conduct resulted from simple negligence or inattentiveness to its obligations. I am convinced that TECO knew what the injunction said and meant. For whatever reason, it ignored that understanding and meaning when it started discussing the additional projects, and including in those discussions technical issues, such as float bath dimensions and configurations and daily production rates.

Whether these discussions were based on Asahi's proprietary information, as it contends, or did not encompass such information, as TECO argues, is immaterial. What matters is, as I found in my earlier order, that TECO used information learned from Schott during the NOWA project in furtherance of its desire to participate in the ALPHA (and, possibly, Korean) project.

---

led to these proceedings. Also among those reasons was TECO's notice to the court and Asahi that it desired confirmation that its discussions with Schott would not contravene the injunction. No matter what provoked these proceedings, they have resulted in a finding by me that TECO failed to comply with this court's injunction against any use by it of information derived from Schott during the NOWA project.

4

I conclude, therefore, that sanctions, in the form of an award of fees in favor of the party that had to expend those fees to enforce its rights under the injunction and protect the interests it seeks to protect through this litigation, are merited. *See, e.g.*, *McMahan v. Po Folks, Inc.*, 206 F.3d 627, 634 (6th Cir.2000); *Redken Lab., Inc. v. Levin*, 843 F.2d 226, 230 (6th Cir.1988); *BAS Enterprize, Inc. v. City of Maumee* 282 F. Supp. 2d 673, 686 (N.D. Ohio 2003).

### 2. Awarding Fees in This Case is Appropriate

TECO contends that its conduct was not such as to justify an award of fees and costs. This is especially so, it states, because it brought itself fully into compliance once concerns were expressed about its seeking to work with Schott on the ALPHA project.

In essence, TECO is arguing that it should not suffer any adverse consequences because none of the interests that Asahi sought to protect through these proceedings (and, indeed, through this lawsuit) were either jeopardized or significantly affected by the preliminary discussions with Schott.

While this may true, as far as it goes, this contention does not acknowledge the fact that Asahi acted, and properly so, in response to circumstances that it perceived as, at the very least, potentially jeopardizing those interests.

Particularly in the context of its continuing and still unresolved dispute with Schott, Asahi necessarily had to act promptly and forcefully. It may have perceived that any apparent weakening of its resolve and effort to protect itself in this proceeding might have had a negative effect on the Swiss arbitration proceedings. Even if not, Asahi had every reason – and all of them good ones – to respond vigorously to TECO's apparent failure to comply with the injunction.

5

Aside from overlooking the fact that Asahi suffered damage in the expenditure of attorneys' fees and costs, TECO's claim that its conduct caused *de minimus*, if any, harm ignores the fact that had more direct and actual damage been caused to Asahi, it would have been held accountable for that harm as well.

TECO points to its post-June, 2004, complete compliance with the injunction as a basis for denying reimbursement to Asahi. That fact is not, however, grounds for mitigation, although continuing non-compliance would have justified enhancement of any sanction.

### 3. The Harm/Amount Being Sought are Not Disproportinate

TECO argues that the amount being sought disproportionately exceeds the harm to Asahi. This contention disregards the fact that Asahi is simply seeking reimbursement for money it had to spend due to TECO's misconduct; money it otherwise would not have had to spend. Assuming that the fees themselves are not somehow intrinsically excessive, the award of reimbursement for those fees is, accordingly, directly commensurate with the damage incurred.

TECO's argument in this respect is, ultimately, as much an appeal to this court's sense of fairness as it is to its discretion.

Put most simply: I find nothing inherently unfair in the request for reimbursement of actual, verifiable, and reasonable expenses.

### 4. Asahi's Motives are Immaterial

TECO contends that the fee request should be denied because Asahi's purpose was not to recoup its expenditures but to gain a commercial advantage over TECO and potential competitors.

6

As Asahi points out in its reply brief, I have already expressed the view that Asahi's motives are immaterial. What matters is whether it is entitled by law to be reimbursed, and, if so, the amount of the reimbursement. The fact that Asahi may have other purposes in mind, aside from enforcing the injunction in its favor and protecting the interests protected by the injunction, is unrelated to the issues before me.

### 5. Asahi is Entitled to Recover All its Expenditures

TECO's strongest argument is that the amount of fees for which reimbursement is sought is excessive and unreasonable. According to TECO, too much time was spent by too many lawyers who charged too much per hour.

TECO does not contend that the time was not in fact spent. Nor does it assert that the ancillary expenses are inaccurately reported.

I agree with Asahi that it should not be penalized for employing counsel of its choice, and paying its lawyers at New York City rates, though those rates are about double the rates of similarly competent counsel in the Toledo area. Asahi's lead counsel in this proceeding is also its lead counsel in the arbitration. There is a substantial likelihood, in my view, that more, not less money would have been spent had Asahi undertaken to be represented by Toledo or Ohio counsel unfamiliar with Asahi, the technological issues, and the interplay between this case and the Swiss arbitration. The time new counsel would have needed to learn what Asahi's counsel already knew might well have resulted in greater, rather than lower fees, even if the hourly rates were substantially less.

Asahi is, moreover, engaged in a two-front campaign. It is entitled to have the same commander in charge on both fronts.

After careful consideration of the briefs and arguments of the parties, I am also persuaded that the hours expended were not unreasonable or excessive. This litigation is clearly important to both parties, each of which has shown a willingness to apply whatever resources appear necessary to make their points and seek to prevail. The quality of lawyering by all counsel has been first-rate, and first-rate counsel do not charge bargain-basement fees.

Asahi responds to the charge that too many lawyers worked too many hours by persuasively pointing out that, with regard to several of the activities for which lots of hours were spent, TECO'S attorneys spent as much or more time on the same task or preparing for the same hearing.

To the extent that, overall, Asahi invested in more time from more lawyers, it explains that fact on the basis that it was the moving party and had to establish a prima facie case of noncompliance with the injunction. Fairly extensive discovery was necessary, especially for Asahi to find out before the hearings what had occurred between Schott and TECO after the injunction had been entered. TECO knew that information; Asahi had to get it.

Moreover, as Asahi correctly points out, it had to be prepared to meet what it anticipated would be a vigorous and extensive evidentiary presentation on TECO's part. TECO had marked several dozen exhibits, and Asahi assumed that most or all would be put into play during the show cause hearings. It had no way of knowing in advance that TECO would present no evidence at the final hearing.

I conclude, therefore, that the time and labor expended, and the numbers of attorneys and others involved in that expenditure, were appropriate. The questions at issue were not simple, especially in the overall context of this litigation and, as well, the Swiss arbitration proceeding. The professional skill applied to these proceedings was of the very highest, and was compensated accordingly by Asahi. What was at

8

stake was of great importance to Asahi, and the results obtained were worthy of the effort undertaken and expenses incurred. *See generally Paschal v. Flagstar Bank,* 297 F.3d 431, 434$437 (6th Cir. 2002) (describing, *inter alia*, the proper approach in determining whether an award of attorney fees was reasonable); *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996) (describing the factors used to determine whether an award of attorney fees was reasonable).

Consideration of the additional factors from the lodestar method, *see generally Hensley v. Eckerhart*, 461 U.S. 424 (1983), of determining whether fees should be shifted pursuant to statute does not alter my conclusion that Asahi is entitled to full recovery of the amounts it expended.

While working on this proceeding, counsel was no doubt precluded from doing much, if any work for other clients. The fees paid were customary for him and his office, and were paid on a fixed, rather than a contingent basis. Time limitations were not overly severe, but they played a role, as the parties and I desired to resolve the show cause issues as expeditiously as possible. The experience, ability, and reputations of all the attorneys in this case are of the highest order.

Counsel for Asahi appear to have a close and continuing relationship with their client. While the case and proceedings do not appear undesirable, that factor is immaterial in this proceeding, as is the issue of awards in similar cases. As TECO correctly points out, there does not appear to be a case involving a fee request of similar magnitude in this jurisdiction. But that does not matter, as I am persuaded that the fees were earned because the work was needed by the client for it to secure the result that was accomplished.

I conclude, accordingly, that Asahi is entitled to full reimbursement for the monies it had to expend to protect its rights under the injunction, and, as well the interests that it perceives to be at stake in this case.

**Conclusion**

For the foregoing reasons, it is

ORDERED THAT the application for an award of attorneys' fees and costs be, and the same hereby is granted.

The plaintiff shall submit a supplemental statement of fees and expenses paid through the date of this order, including therein as well, the fees and costs to be charged for preparing such supplemental statement, on or before September 20, 2005; defendant may, if it desires, file a supplemental opposition on September 30, 2005, at which time the fee and cost application shall be deemed submitted for computation of a final award.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge