IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Asahi Glass Co., Ltd.,                                    Case No. 3:03CV7120

          Plaintiff

    v.                                                          ORDER

Toledo Engineering Co., Inc.,

          Defendant

## I. Introduction

Asahi Glass Co., Ltd. ("Asahi") brings this action against Toledo Engineering Co., Inc.

("TECO") for unfair competition, unjust enrichment, and misappropriation of Asahi's trade

secrets. Asahi's claimed know-how relates to the production of ultra-thin glass for use in

computer, television, and cellular phone display screens, known as thin film transistor ("TFT")

glass.

Asahi claims that TECO, a supplier of glass-melting furnaces and glass production

equipment, obtained Asahi's know-how from a third party, Schott Glas AG and Schott Jenaer

Glas GmbH (collectively, "Schott"). Under an Asahi/Schott license agreement ("license

agreement"), Schott had access to Asahi's know-how for a limited purpose: to help Schott

produce flat glass products for non-electronic (i.e., non-TFT) applications. The license

agreement prohibited Schott from using Asahi's know-how outside of this joint venture.

Schott subsequently entered into a contract with TECO for the construction of a TFT

glass production facility (the "NOWA" project). Asahi claims that the NOWA project violates

the Asahi/Schott license agreement by incorporating Asahi's know-how without Asahi's permission. In response to Schott's alleged misuse of Asahi's know-how, Asahi initiated an 1) International Chamber of Commerce (ICC) arbitration (the "arbitration") against Schott (ICC Arbitration No. 12131/DK/RCH), and 2) this misappropriation action TECO.

Count I asserts a claim for misappropriation under O.R.C. §§ 1333.61-.69. Count II asserts a claim for misuse and misappropriation of trade secrets under Ohio common law. Count III asserts a claim for unfair competition under 15 U.S.C. § 1126(h). Count IV asserts a claim for unfair competition under Ohio common law. Count V asserts a claim for unjust enrichment under Ohio common law.

Proceedings in this case were, to a considerable extent, held in abeyance pending the outcome of the Asahi/Schott arbitration. After the arbitration's liability phase ended, the parties filed cross-motions for summary judgment on the question of the preclusive effect this court must give to findings of the Arbitral Tribunal ("Tribunal"). Each party seeks to use issue preclusion to foreclose the other from relitigating certain issues decided by the Tribunal. TECO also argues in its motion that those items of know-how that survive this court's imposition of issue preclusion against Asahi are not entitled to trade secret protection.

For the following reasons, Asahi's motion to impose issue preclusion offensively against TECO shall be denied. TECO's motion shall be granted in part and reserved in part: TECO's may impose issue preclusion defensively against Asahi, but this court reserves judgment on TECO's motion to deny trade secret protection to Asahi's know-how.

2

## II. Background

### A. Asahi/Schott Relationship and Arbitration

Asahi, a Japanese corporation, manufactures specialty glass, including ultra-thin glass for use in TFT flat panel displays. Asahi manufactures this glass using a method whereby molten glass flows onto a bath filled with molten tin. The glass spreads out to the desired thickness and is cooled, cut, and shipped to customers.

In 1992, Asahi and Schott entered into a series of agreements to use Asahi's know-how to jointly develop a technology to manufacture TFT glass. Asahi granted Schott a limited license to use Asahi's know-how to design, construct, and operate a microfloat bath in Germany. The Asahi/Schott license agreement precluded Schott from using Asahi's know-how to produce TFT glass.

On May 9, 2002, Asahi initiated an arbitration proceeding against Schott pursuant to an arbitration provision in the Asahi/Schott license agreement. Asahi alleged that Schott breached the parties' license agreement and violated applicable misappropriation law[1] by: 1) using Asahi's know-how to develop technology for the production of TFT glass; 2) using Asahi's know-how to develop and/or sell and/or offer to sell TFT glass; 3) disclosing Asahi's know-how to third parties, including TECO, in connection with the NOWA project; and 4) using Asahi's know-how in the NOWA project outside the scope permitted under the parties' agreement.

Asahi and Schott agreed to various procedural rules governing the arbitration. The parties agreed, inter alia, to keep confidential during and after the arbitration all orders, awards, and arbitration documents ("Confidentiality Provision"). They also agreed that certain individuals

---

[1]

Japanese substantive law governs the Asahi/Schott license agreement.

could not serve as expert witnesses in the arbitration, namely: employees of any glass

manufacturer, glass equipment supplier, or glass machinery supplier using the float method

("Expert Witness Provision").

## B. Schott-TECO Relationship

Schott informed Asahi by letter dated October 31, 2001 that Schott had developed a new

TFT glass technology, which Schott planned to use to build a NOWA tank and float bath. Schott

asked Asahi if it would be interested in participating in this venture. Asahi declined Schott's

offer, as Asahi had already established its own TFT technology and customer base.

In February 2002, Schott solicited TECO's bid for a complete float bath design and

construction package for the NOWA project. This led to a Schott-TECO float bath contract.

## C. Asahi-TECO Action

In a letter to TECO dated May 21, 2002, Asahi informed TECO that Schott, without

Asahi's authorization, may have disclosed or may disclose to TECO Asahi's proprietary and

confidential information relating to TFT float glass. Asahi also stated that it had initiated an

arbitration seeking to stop Schott from using or disclosing this know-how in violation of the

Asahi/Schott confidentiality and license agreements.

In a second letter to TECO dated March 11, 2003, Asahi notified TECO that,

notwithstanding Asahi's prior notice to TECO, Asahi believed TECO was using Asahi's trade

secrets to design and build float bath equipment. Asahi reiterated its demand that TECO cease

and desist from using or disclosing Asahi's know-how. Asahi generally described the proprietary

technologies it maintained as trade secrets and asserted that, to the extent TECO was using such

4

know-how in designing and constructing float bath equipment, TECO was engaged in misappropriation and unfair business practices.

### D. TECO's Limited Arbitration Participation

As a result of the confidentiality and related procedural aspects of the Asahi/Schott arbitration, TECO neither participated directly in nor had direct access to the arbitration proceedings. TECO's participation in the Asahi/Schott arbitration was limited to the following activities:

First, Fred Paulsen, TECO's President and Chief Operating Officer (then Vice President of Operations), met with Schott's counsel on October 3, 2002 – shortly before the Arbitral Tribunal was to hold a preliminary injunction hearing. They discussed the NOWA project and the Asahi/Schott arbitration. Schott's counsel told Paulsen that Asahi accused Schott of improperly using certain Asahi know-how items. The attorney did not tell Paulsen the substance of Asahi's claimed know-how.

Second, TECO helped Schott identify potential experts to give testimony or assist counsel in the arbitration. According to Paulsen, however, TECO *did not*: 1) advise Schott what strategy Schott should follow in the preliminary injunction hearing; 2) review any of Schott's documents to be filed with the Tribunal; 3) pay Schott's attorneys' fees relating to the hearing. Additionally, Paulsen notes, TECO's attorneys did not represent Schott in the preliminary injunction hearing.

Third, Paulsen submitted a witness statement to the Tribunal. On October 17, 2002, Paulsen met with Schott's counsel, who asked Paulsen to outline several topics in this statement: 1) TECO's receipt of a letter from Asahi stating that Asahi had initiated an arbitration

5

proceeding against Scott; 2) TECO's organizational structure; 3) Schott-TECO contracts;

4) NOWA line drawings; and 5) NOWA line design information TECO received from Schott.

Fourth, after receiving a request in writing from Schott's counsel, TECO submitted a

further witness statement to the Tribunal discussing several topics: 1) Schott-TECO contracts; 2)

the specifications and drawings TECO received from Schott; 3) TECO's claim that it used only

public domain information and its own know-how to design Schott's float glass line; and 4) the

methodology TECO used to recommend design specifications for Schott's float glass line.

### E. Schott-TECO Relationship

### 1. Joint Defense Agreement

On April 8, 2003, shortly after this lawsuit began, TECO and Schott orally entered into a

joint defense agreement ("JDA"). On August 17, 2004, TECO and Schott signed a written joint

defense agreement, in which TECO and Schott concluded that they had a common legal interest

in jointly defending against the claims asserted by Asahi in the arbitration and in this case.

TECO and Schott also recognized that their interests – although then currently aligned – could

diverge in the future.

TECO has objected to several Asahi document requests in this action based in part on a

Schott-TECO joint defense privilege. The requests to which TECO has objected include

information relating to: 1) Schott-TECO communications regarding the arbitration and this

action; 2) communications regarding and payments made under a Schott-TECO Indemnity

Agreement; 3) TECO's decision to retain Jones Day, which represents Schott in the arbitration,

as counsel; and 4) TECO's subsequent decision to have Jones Day withdraw as counsel.

## 2. Schott-TECO Indemnity Agreement

On August 8, 2002, Schott and TECO entered into an Indemnity Agreement. In this agreement, Schott and TECO warranted that neither had disclosed nor will disclose to the other any proprietary information of Asahi or of any other third party relating to the construction of a float bath for TFT glass.

If such disclosure occurs, the disclosing party must indemnify the non-disclosing party against the claims of third parties with whom the disclosing party has entered into a confidentiality agreement. The disclosing party must protect the non-disclosing party against any and all claims arising out of the disclosure relating to the construction of a float bath for TFT glass.

## 3. Jones Day as Counsel

Jones Day was counsel for both TECO and Asahi from October 15, 2004, until May 30, 2006, when this court granted Jones Day's motion to withdraw as TECO's counsel.

## F. Arbitral Tribunal's Conclusions

Thus far, the Arbitral Tribunal has issued two awards in the Asahi/Schott arbitration: a March 17, 2004 Award and a January 30, 2006 Award. In these Awards, the Tribunal concluded that fourteen of Asahi's twenty-three items of claimed know-how were proprietary to Asahi. Additionally, the Tribunal found that of these fourteen items of know-how, only four were disclosed to TECO by Schott.

**III. Discussion**

**A. Legal Standard for Claim Preclusion and Issue Preclusion**

Under the doctrine of claim preclusion (also known as res judicata), a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.5 (1979). In contrast, under the doctrine of issue preclusion (also known as collateral estoppel), once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party (or his or her privy) to the prior litigation. *Montana v. United States*, 440 U.S. 147, 153 (1979) (citations omitted).

The doctrines of issue preclusion and claim preclusion serve important goals: 1) preventing parties from re-contesting matters that they earlier had a full and fair opportunity to litigate; 2) protecting adversaries from the expense and vexation of having to participate in multiple lawsuits; 3) conserving judicial resources; and 4) fostering reliance on the judiciary by minimizing the likelihood that decisions will be inconsistent. *Id.* at 153-54 (citations omitted).

The Sixth Circuit recognizes that in various opinions, it has stated slightly differently the exact requirements necessary to invoke collateral estoppel. *Wolfe v. Perry*, 412 F.3d 707, 716 (6th Cir. 2005). Most recently, however, the Sixth Circuit has indicated that a party may invoke issue preclusion when: 1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation; 2) the issue was actually litigated and decided in the prior action; 3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation;[2] 4) the party to be estopped was a party to the prior litigation (or in privity with such a

---

[2]

Unconfirmed arbitral awards – those that are unreviewed by any court – are not "judicial proceedings" entitled to recognition under the full faith and credit statute. *McDonald v. W. Branch*, 466 U.S. 284 (1984); *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 222-23 (1985). As a

party); and 5) the party to be estopped had a full and fair opportunity to litigate the issue. *Id.* The

party seeking to invoke collateral estoppel bears the burden of proving that the necessary

elements have been satisfied. *In re McWhorter*, 887 F.2d 1564, 1566 (11th Cir. 1989) (citation

omitted).

Ultimately, however, "no one set of facts, no one collection of words or phrases, will

provide an automatic formula for proper rulings on estoppel pleas." *Blonder-Tongue Labs. v.

Univ. of Ill. Found.,* 402 U.S. 313, 333-34 (1971). Instead, "[the] decision will necessarily rest

on the trial courts' sense of justice and equity." *Id.* at 334.

---

result, courts must fashion their own rules in determining the preclusive effects of arbitral
awards in subsequent judicial proceedings. *See, e.g., In re D. Robinson*, 256 B.R. 482, 487-89
(S.D. Ohio 2000) (applying res judicata to unconfirmed arbitration award that was final under
the rules pursuant to which it was issued; noting absence of Sixth Circuit precedent and
describing as "highly persuasive" decisions of other courts applying issue preclusion and/or
collateral estoppel to final but unconfirmed arbitration awards).

Here, the arbitration is not yet complete: the Tribunal must still resolve the issue of damages and
attorney fees. Asahi has also asked the Koblenz Court of Appeals to confirm the Tribunal's two
Awards. Nevertheless, the arbitration has reached a reasonably final stage to allow this court to
consider applying issue preclusion to the Tribunal's conclusions. As Judge Friendly has
explained, whether a judgment is sufficiently "final" for purposes of issue preclusion is a fact-
specific inquiry:

> Whether a judgment . . . ought nevertheless be considered 'final' in the sense of
> precluding further litigation of the same issue, turns upon such factors as the nature
> of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing,
> and the opportunity for review. 'Finality' . . . may mean little more than that the
> litigation of a particular issue has reached such a stage that a court sees no really
> good reason for permitting it to be litigated again.

*Lummus Co. v. Commonwealth Oil Ref. Co.*, 297 F.2d 80, 89 (2d Cir. 1961).

I note that the parties appear to be in agreement that the arbitration has reached a point at which
the Tribunal's findings can be given preclusive effect.

10

## B. Asahi's Offensive Use of Issue Preclusion

Asahi seeks to use claim preclusion offensively[3] against TECO. A plaintiff uses collateral estoppel offensively when he or she attempts to foreclose the defendant from litigating an issue the defendant has litigated unsuccessfully in a previous action with another party. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.4 (1979).

Asahi attempts to prevent TECO from relitigating two findings by the Tribunal: that 1) fourteen items of know-how ("Fourteen Know-How Items") are proprietary to Asahi and are not known by or readily accessible to others in the industry; and that 2) Schott disclosed four of these items ("Four Know-How Items") to TECO.

---

[3]

Courts treat the offensive and defensive use of collateral estoppel differently for several reasons. *Parklane Hosiery,* 439 U.S. at 329. First, whereas the defensive use of collateral estoppel promotes judicial efficiency, the offensive use discourages potential plaintiffs from intervening in a pending action. *Id.* at 329-30. A potential plaintiff mindful of the likely application of defensive collateral estoppel has an incentive to join all potential defendants in the first action. *Id.* The plaintiff knows that he or she cannot relitigate identical issues by merely switching adversaries. *Id.*

In contrast, a plaintiff interested in using collateral estoppel offensively has an incentive to "'wait and see'" what the outcome of another case will be. *Id.* at 329 (citations omitted). The potential plaintiff knows that he or she will be able to rely on another plaintiff's judgment through offensive issue preclusion, but will not be bound by the judgment if the other plaintiff loses. *Id.*

Second, the offensive use of collateral estoppel may be unfair to a defendant in several situations: 1) the defendant in the first action is sued for nominal damages and has little incentive to defend vigorously; 2) the judgment relied on as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant; or 3) the second action affords the defendant important procedural opportunities unavailable in the first action (e.g., the defendant did not choose the forum; the defendant in the first action was forced to defend in an inconvenient forum and therefore was unable to engage in full scale discovery or call witnesses). *Id.* at 330-31.

### 1. Fourteen Know-How Items

### a. Identity of Issues

### i. Issue Comparison

Issue preclusion applies only when the issue in the subsequent litigation is identical to the issue resolved in the earlier action. *Wolfe v. Perry*, 412 F.3d 707, 716 (6th Cir. 2005). Determining the dimensions of the issues can be difficult because this task requires the court to balance two important interests: 1) providing litigants with an adequate day in court; and 2) preventing repetitious litigation. *See* Restatement (Second) of Judgments § 27, cmt. c (1982).

In the March, 2004, Award, the Tribunal acknowledged that Asahi had asserted a claim against Schott for unfair competition under Japanese law. The Tribunal also noted that the Japanese unfair competition statute defined "trade secret" as "technical or business information useful in commercial activities, such as manufacturing or marketing methods, which is kept secret and not publicly known." (2004 Award ¶ 893 (citing Article 2(4) UCPL).)

In the January 2006 Award, the Tribunal concluded that Asahi had proven certain elements needed to establish its unfair competition claim under Japanese law:

> 832. With respect to the requirements for a claim under Article 2(1)(7) UCPL, given the Tribunal's finding that the claimed elements of ASAHI know-how referred to above have been confirmed as being proprietary and confidential (i.e. transferred in writing under the ALA) ASAHI know-how under paragraph 509 of Claimant's Prayers for Relief, it cannot be disputed that the trade secret and disclosure requirements have been met.

(2006 Award ¶ 832.)

TECO argues that the Tribunal's conclusions regarding the Fourteen Know-How Items are different from the questions before this court. Specifically, TECO contends that the Tribunal

did not determine that any of the design features claimed by Asahi were, in effect, trade secrets under Ohio law.

Under Ohio law, a "trade secret" must satisfy the following two requirements: 1) it derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and 2) it is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. O.R.C. § 1333.61(D).

TECO argues that the requirement under the Japanese unfair competition statute that a trade secret not be "publicly known" is different from its counterpart requirement under Ohio law: that a trade secret not be "generally known to" or "readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use."

I agree. The issues resolved by the Tribunal and those before this court are not identical because the legal standards governing their resolution differ. *See Pace v. Bogalusa City Sch. Bd*., 403 F.3d 272, 290 (5th Cir. 2005).

Ohio courts could not give trade secret protection to information that, for example, a competitor could develop or identify through its own expertise. The Japanese statute imposes no such limitation. As a result, TECO argues, the Tribunal "would have found a design feature claimed by Asahi to be a trade secret under [Japanese] law even if TECO had knowledge of or would have readily been able to ascertain the claimed design feature simply by applying its own knowledge and experience to the [NOWA] design challenges." (Def.'s Rep. to Pl's Mot. for Summ. J. 11.)

13

Because the issues decided by the Tribunal differ from the issues this court must resolve, Asahi, accordingly, cannot invoke issue preclusion offensively against TECO.

### ii. Burden of Persuasion

Even if the issues relating to the Fourteen Know-How Items in the arbitration and in this action were identical, however, Asahi's attempted use of issue preclusion would be inappropriate if Asahi had a lighter burden of persuasion before the Tribunal than it has in this court.

This court instructed Asahi to identify any of the Tribunal's conclusions that Asahi contends are binding on TECO. Asahi, in turn, provided TECO with a list of know-how items that, according to Asahi, the Tribunal determined are proprietary to Asahi:

> As per the Arbitral Awards of March 17, 2004 (the "2004 Award") and January 30, 2006 (the "2006 Award") (collectively, the "Awards"), the following items of technology were conveyed in writing to Schott under the Asahi License Agreement ("ALA"), and Schott failed to prove any exception under the ALA (such that these items were part of the public knowledge, in Schott's possession at the time of disclosure, or received from third parties). Therefore, the Tribunal found that the following items are proprietary to Asahi:

(TECO Ex. QO.)

Asahi's burden of persuasion on the question of the "proprietary" nature of its know-how, TECO argues, is less rigorous than the burden of a litigant attempting to establish "trade secret" status under Ohio law. According to TECO, all Asahi had to prove in the arbitration to establish that its know-how was "proprietary" was that Asahi conveyed the know-how to Schott pursuant to the procedures outlined in the Asahi/Schott agreements.

I agree. The initial question resolved by the Tribunal is whether the Fourteen Know-How Items were conveyed in writing to Schott under the Asahi/Schott license agreement. If the Tribunal so concluded, it presumptively identified the Fourteen Know-How Items as

14

"proprietary" to Asahi.[4] Then, the burden shifted to Schott (and, in effect, to TECO – Scott's putative privy) to establish that an exception to the license agreement applied: that the Fourteen Know-How Items were part of the public knowledge, in Schott's possession at the time of disclosure, or received from third parties.

In contrast, under Ohio law, the burden is not on Schott (or TECO) to *disprove* that Asahi's know-how is confidential and proprietary. Rather, Asahi, the party asserting trade secret status, would have the burden to prove that its know-how qualifies as a "trade secret." *See, e.g., GZK v. Schumaker Ltd. P'ship*, 168 Ohio App. 3d 106, 116, 858 N.E.2d 867, 875 (2006).

This court must reject Asahi's attempt to use issue preclusion offensively because "the process by which the issue was adjudicated cannot be reconstructed on the basis of a new and different burden." Restatement (Second) of Judgments § 28, cmt. f (1982). This court cannot conclude that Schott (or TECO), the losing party in the prior action, "would also have lost had a significantly different burden been imposed." *Id.* While Schott could not disprove in the arbitration that Asahi's know-how was "proprietary," this court cannot assume that, under a different standard, Asahi could demonstrate to this court that the Fourteen Know-How Items each qualify as a "trade secret" under Ohio law. For this reason, Asahi's attempted offensive use of issue preclusion is inappropriate.

### b. Privity

---

[4]

The Tribunal stated that "[i]n light of the [Asahi License Agreement] definitions, Asahi had in principle proprietary rights with respect to the know-how relating to the micro-float process which it licensed to Schott..." Thus, the Tribunal described certain of Asahi's know-how as "proprietary" because this know-how was covered by the Asahi/Schott agreement's definitions of "licensed products" and "licensed know-how." "Proprietary" is synonymous here with "covered by the parties' license agreement." (2004 Award ¶ 471.)

15

Claim preclusion can be used to bind a non-party only if the non-party was in privity with a party to the prior action. *Becherer v. Merrill Lynch, Pierce, Fenner & Smith*, 43 F.3d 1054, 1069 (6th Cir. 1995). A privy is defined as: 1) a non-party who has succeeded to a party's interest in property (a successor in interest); 2) a non-party who controlled the original suit; or 3) a non-party whose interests were adequately represented by a party in the original suit (through "virtual" or "adequate" representation). *Id.* at 1069-70 (citations omitted).

I conclude, based on the combination of the following factors, that TECO and Schott are in privity: 1) Schott and TECO entered into a Joint Defense Agreement that articulates their common legal interest to jointly defend against Asahi's claims; 2) Schott and TECO are parties to an Indemnification Agreement that gives Schott ample incentive to defend their joint interests vigorously; and 3) Schott and TECO both retained Jones Day as counsel to cement their joint defense relationship and maximize the likelihood that both would prevail against Asahi, their "mutual foe." (Def.'s Initial Supp. Br. on Preclusion 18.)

### i. Joint Defense Agreement and Joint Defense Privilege

Asahi argues that TECO should be bound by principles of preclusion based on privity because, by entering into the Joint Defense Agreement, TECO acknowledged that its and Schott's interests were aligned. In fact, Asahi argues, TECO and Schott admit in the JDA that no identifiable inconsistent interests existed between them at the time the parties signed the JDA.

In response, TECO argues that it entered into the JDA for a very simple purpose from which the court should not draw any conclusions adverse to TECO: to benefit from Schott's superior knowledge. As TECO explains:

> TECO has recognized from the outset of this litigation that both it and its counsel were far less familiar with the matters at issue in this case and in the arbitration

16

proceeding then [sic] were Schott and Asahi and their counsel. Accordingly, TECO attempted to proceed as efficiently as possible by making use [of] the superior knowledge of Schott and its counsel whenever possible.

(Def.'s Resp. To Pl's Mot. For Summ. J. 24.)

TECO further argues that this court cannot infer from the existence of the JDA that TECO was able to defend its interests in the arbitration, as the Confidentiality Provision in the arbitration's Terms of Reference prevented TECO from learning about the substance of the proceeding.

Similarly, TECO notes that the fact that TECO and Schott invoked the joint defense privilege to protect certain communications does not mean that Schott *in fact* protected TECO's interests during the arbitration. TECO argues as follows:

> The mere fact that parties facing a mutual foe decide to discuss possible joint responses to the challenges posed by that foe does not give one party control over the other or the right to call the other party to account for their future conduct. Indeed, joint defense agreements do nothing more than shield communications between such parties from the prying eyes of their common foe.

(Def.'s Initial Supp. Br. on Preclusion 18.)

I conclude that the existence and content of the Schott-TECO Joint Defense Agreement demonstrates that Schott's and TECO's interests were aligned during the arbitration and this action. *See, e.g., Crown Equip. Corp. v. Toyota Material Handling*, 2005 WL 2454116, at *4 (N.D. Ohio) (holding that a joint defense agreement, shared counsel, and a non-party's control over expert retention all supported finding of privity). TECO is correct that the JDA did not guarantee that Schott would protect TECO's interests in the arbitration. The Joint Defense Agreement does, however, articulate TECO's and Schott's shared goal in defending against Asahi's claims, and these goals themselves make it likely that Schott served as TECO's "virtual

17

representative" during the arbitration. Thus, the Schott-TECO Joint Defense Agreement supports this court's conclusion that TECO is Schott's privy.

### ii. Indemnification Agreement

Asahi argues that TECO's decision to enter into an Indemnification Agreement with Schott is further evidence that TECO and Schott are in privity. According to Asahi, the interests of TECO and Schott were aligned: both wanted the Tribunal to conclude that Asahi lacked proprietary rights in its claimed know-how. This conclusion, Asahi notes, would allow Schott to enter the TFT market unimpeded and would allow TECO and Schott to continue with the NOWA project without fear of interference from Asahi.

TECO acknowledges that the Schott-TECO Indemnification Agreement protects TECO from claims arising out of the use of improperly disclosed information in connection with the design and construction of a TFT tin bath. TECO argues that the Indemnity Agreement is far from comprehensive, however, as it does not: 1) extend to non-TFT baths; 2) protect TECO against the consequences of injunctive relief; 3) make Schott accountable to TECO for Schott's conduct during the arbitration; or 4) allow TECO to control Schott's defense.

TECO's argument is without merit. The language of the Agreement – signed three months after Asahi initiated arbitration proceedings against Schott – reflects that Schott and TECO carefully considered the following circumstances: 1) the pending Asahi/Schott ICC Arbitration; 2) Asahi's stated intention to pursue action against TECO or any other party that, in Asahi's judgment, has wrongfully used Asahi know-how; and 3) the possibility that TECO's continued participation in the NOWA project may expose TECO to such an action by Asahi.[5]

---

[5]

The first four clauses of the Indemnity Agreement refer to: 1) Schott's plans to construct with

18

TECO and Schott intended that the Indemnity Agreement would protect TECO from the consequences of any violation by Schott of Asahi's proprietary rights. In fact, as Asahi notes, the Agreement has served its purpose in this action: Schott has paid all of TECO's attorneys' fees and costs, and two-thirds of a contempt award against TECO.

It is insignificant that the Indemnification Agreement fails to protect TECO from all variations of damage. The Agreement nonetheless provides Schott with sufficient incentive to protect TECO against loss relating to TFT glass technology – loss for which Schott would ultimately be responsible.

The results sought by Asahi are precisely those that the parties did anticipate – or could have anticipated – while negotiating the Indemnification Agreement. Any "broader interests" of TECO now "under attack by Asahi," (Def.'s Resp. To Pl's Mot. For Summ. J. 18), do not affect Schott's incentive to minimize its exposure to damage – either direct damage suffered by Schott during the arbitration or indirect damage Schott faces from a claim by TECO under the Indemnification Agreement. TECO's interests remain adequately represented by Schott.

### iii. Jones Day as Counsel

Asahi argues that Jones Day's joint representation of Schott and TECO cemented the joint defense relationship that already existed between them. Jones Day, Asahi notes, withdrew as counsel for TECO only after this court instructed Asahi and TECO to brief certain preclusion

_____

TECO's help a float glass facility for the production of TFT glass; 2) Asahi's allegations that Schott is wrongfully using certain Asahi know-how for the construction of this facility; 3) Asahi's admonition to TECO that Schott may disclose confidential and proprietary Asahi know-how in connection with a TFT glass project; and 4) Asahi's stated intention to protect its property from unlawful disclosure.

issues, "when the relationship between TECO and Schott – including the fact of shared counsel – would become material to the key issue of whether TECO and Schott were in privity." (Pl.'s Rep. in Support of Pl.'s Mot. for Summ. J. 11.)

TECO indicates that it retained Jones Day as its counsel for the same reason it entered into the Joint Defense Agreement with Schott: to benefit from Schott's superior knowledge. TECO argues that "counsel for TECO could not . . . match the knowledge and understanding of Asahi's counsel of the facts at issue in this case." (Def.'s Resp. To Pl's Mot. For Summ. J. 25.) TECO emphasizes that Jones Day, lead counsel for Schott, was neither TECO's lead nor exclusive counsel. Instead, TECO submits, TECO's retention of Jones Day "simply broadened the scope of the information to which [Jones Day attorneys] had access under the protective order." *Id.*

A finding of privity is not appropriate solely because Jones Day represented both Schott during the arbitration and TECO during part of this action. *See S. Cent. Bell Tel. Co. v. Alabama*, 526 U.S. 160 (1999). The fact that Schott and TECO shared the same counsel does not by itself create a "special representational relationship" between the parties, nor does it mean that TECO could expect to be bound by the Tribunal's conclusions. *See id*.

Various courts, however, have concluded that the existence of shared counsel supports a finding of privity where other factors present suggest that a unique relationship exists between the two parties. *See, e.g., Vasquez v. Bridgestone/Firestone*, 325 F.3d 665, 677 (5th Cir. 2003); *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 209 (3d Cir. 2001). Here, too, the combination of three factors – the Indemnification Agreement, the Joint Defense Agreement, and shared counsel – demonstrates that TECO and Schott are in privity. TECO and Schott, facing a

20

mutual adversary, sought to invoke similar legal strategies against Asahi with the help of
attorneys fortified by knowledge of and experience in both proceedings. Thus, TECO's interests
were so closely aligned with Schott's that Schott was able to serve TECO's interests during the
arbitration.

### c. Full and Fair Opportunity

Asahi argues that TECO had a full and fair opportunity[6] to participate in the arbitration:
1) TECO knew of the pendency of the arbitration (through Asahi's two letters to TECO and
through Paulsen's meeting with Schott's counsel); 2) TECO helped Schott identify potential
expert witnesses; 3) Paulsen submitted a witness statement to the Tribunal describing the Schott-
TECO relationship; and 4) TECO submitted a witness statement to the Tribunal describing its
know-how relating to the design of the new float glass line. Asahi contends that "TECO
affirmatively helped Schott in the Arbitration," and "[n]othing would have prevented TECO
from providing Schott with even further assistance." (Pl.'s Resp. 17.)

TECO responds that it would be fundamentally unfair to bind TECO to the Tribunal's
conclusions because Asahi and Schott prevented TECO from meaningfully participating in the
arbitration.

First, TECO notes, Asahi and Schott excluded TECO from the arbitration via the
Confidentiality Provision, by which Asahi and Schott agreed to keep confidential all

---

[6]

Asahi claims that TECO conceded that Asahi and Schott had a full and fair opportunity to
participate in the arbitration. Thus, according to Asahi, TECO has conceded one element of
Asahi's case for issue preclusion. Asahi's argument misses a step. While TECO argues that
Asahi and *Schott* had ample opportunities at the arbitration to present and defend their
arguments, TECO never concedes that it *itself* had such an opportunity. TECO consistently
argues that TECO lacked a full and fair opportunity to participate in the arbitration.

information, documents, and other materials relating to the arbitration. TECO argues that, because the arbitration was cloaked in secrecy, TECO had insufficient information regarding Asahi's claimed know-how to allow TECO to contest the claims' validity.

Asahi responds that the Confidentiality Provision is merely ICC boilerplate. The provision was not designed to exclude TECO, and, in fact, it did not prevent TECO from communicating with Schott. Significantly, Asahi argues, the Confidentiality Provision did not stop Schott from eliciting information from TECO that would help Schott contest Asahi's claims.

As additional evidence of its exclusion from the arbitration proceeding, TECO points to the Expert Witness Provision, which prevented glass industry employees (including TECO employees) from serving as expert witnesses in the arbitration. Expert witnesses would have access to materials relating to the arbitration. Asahi responds that the Expert Witness Provision did not prevent TECO personnel from serving as "non-expert fact witnesses," just as Paulsen did by submitting a witness statement to the Tribunal.

The Supreme Court has repeatedly held that collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a full and fair opportunity to litigate that issue in the earlier case. *See, e.g., Allen v. McCurry*, 449 U.S. 90, 95 (1980) (citing *Montana v. United States*, 440 U.S. 147 (1979); *Blonder-Tongue Labs. v. Univ. of Ill. Found.*, 402 U.S. 313, 328-29 (1971)). Asahi and Schott deprived TECO of a full and fair opportunity to participate in the arbitration by agreeing to keep all arbitration information confidential and by preventing TECO employees from serving as expert witnesses. *See, e.g., E.E.O.C. v. Pemco Aeroplex*, 383 F.3d 1280, 1294 (11th Cir. 2004) (rejecting in Title VII action defendant-

22

employer's attempt to use issue preclusion and claim preclusion defensively against plaintiff EEOC, which was twice denied the opportunity to consolidate its present case against employer with earlier similar private suit by employees accusing same employer of racial harassment: "[I]t seems to us wholly inequitable to hold the EEOC bound by the result in a case that it was not allowed to take part in.").

While TECO could submit materials to the Arbitral Tribunal, it could not effectively or meaningfully engage in the adversary process: it could not select an Arbitrator, review and respond to the pleadings, initiate discovery requests, or negotiate the procedural rules by which the proceedings would be governed. In this highly fact-sensitive proceeding, TECO could only guess which materials or information might sway the arbitrators – or whether it would be worth TECO's time and money to make such an attempt. In the arbitration, TECO was denied the opportunity Asahi and TECO have in this case: to respond to the specific arguments each makes about dozens of issues – some minor, others dispositive. To the extent that TECO participated in the arbitration, TECO fought its adversary with its vision dimmed. Due process prevents this court from imposing issue preclusion on TECO under these circumstances.

### d. Remaining Issues

Because the issues relating to the Fourteen Know-How Items are not common to the arbitration and this action, it is unnecessary to analyze the remaining two issue preclusion factors: 1) whether the issue was actually litigated and decided in the prior action; and 2) whether the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation.

### 2. Four Know-How Items

Because TECO did not have a full and fair opportunity to participate in the arbitration, this court need not decide whether, with respect to the Four Know-How Items, Asahi has satisfied the four remaining issue preclusion requirements.

### C. TECO's Defensive Use of Issue Preclusion

TECO attempts to use issue preclusion defensively against Asahi. The Tribunal concluded that Schott disclosed to TECO only four of the fourteen know-how items that the Tribunal concluded were proprietary to Asahi. TECO seeks to preclude Asahi from relitigating the Tribunal's conclusion that the ten remaining know-how items ("Ten Know-How Items") were not disclosed to TECO.

TECO must establish the following elements to use issue preclusion defensively against Asahi: 1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation; 2) the issue was actually litigated and decided in the prior action; 3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation; 4) the party to be estopped was a party to the prior litigation (or in privity with such a party); and 5) the party to be estopped had a full and fair opportunity to litigate the issue. *Wolfe v. Perry*, 412 F.3d 707, 716 (6th Cir. 2005); *In re McWhorter*, 887 F.2d 1564, 1566 (11th Cir. 1989) (citation omitted).

This court finds that all five elements of issue preclusion are satisfied with respect to the Ten Know-How Items, and Asahi does not oppose TECO's motion on this issue.

The issue TECO seeks to preclude Asahi from relitigating – whether the Ten Know-How Items were disclosed to TECO by Schott – is common to the arbitration and this action. A conclusion that Schott disclosed the Ten Know-How Items to TECO is essential to Asahi's

24

misappropriation claim against TECO under Ohio law[7] and to Asahi's unfair competition claim against Schott under Japanese law. This issue was actually litigated in the arbitration and decided by the Tribunal. Moreover, this issue was necessary and essential to the Tribunal's award.[8] Finally, Asahi–a party to the arbitration–acknowledges that it had a full and fair opportunity to participate in the proceeding.

### IV. Conclusion

For the foregoing reasons, I conclude that Asahi may not assert issue preclusion offensively against TECO on either of two issues: 1) whether the Fourteen Know-How Items are proprietary and confidential to Asahi; or 2) whether the Four Know-How Items were disclosed to TECO by Schott.

I likewise conclude that TECO may assert issue preclusion defensively against Asahi on the issue of whether the Ten Know-How Items were disclosed to TECO by Schott.

For the foregoing reasons, it is therefore ORDERED THAT

1. Asahi's motion for partial summary judgment be, and the same hereby is denied;

2. TECO's motion for summary judgment be, and the same hereby is granted on the question of whether Schott disclosed the Ten Know-How Items to TECO, and reserved on all other issues.

---

[7]

Article 2(1)(7) of the Japanese unfair competition statute requires that Schott have used or disclosed Asahi's information "for the purpose of unfair business competition or of acquiring wrongful profits or for the purpose of inflicting injury" on Asahi. (2006 Award ¶ 831.)

[8]

Although the arbitration is not yet complete, it has reached a reasonably final stage to allow this court to apply issue preclusion to the Tribunal's determinations. *See* discussion *supra* note 2**.**

25

3.  A Pretrial Conference is scheduled for March 19, 2007 at 2:30 p.m. Out of town counsel may

participate by phone.

      So ordered.


                                      s/James G. Carr
                                      James G. Carr
                                      Chief Judge